(No. 73306.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROSE LAWS *et al.*, Appellants.

*Opinion filed April 15, 1993.*

BILANDIC and HARRISON, JJ., took no part.

Carl M. Walsh, of Chicago, for appellants Rose Laws, Kenneth Laws and Linda Laws.

Bernard Nathan, of Chicago, for appellant Judy Lyons.

J. Scott Arthur, of Olympia Fields, for appellant Mary Ellen Usher.

Enrico J. Mirabelli, of Chicago, for appellant Heidi Drost.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Laura L. Morrison, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal follows the reinstatement of conspiracy charges against defendants.

We affirm in part, reverse in part, and remand.

## BACKGROUND

In June 1989, a Cook County grand jury returned 16 indictments in connection with its investigation of defendants who were allegedly instrumental in the operation of an extensive prostitution ring. Eight indictments charged a single count of conspiracy to keep a house of prostitution (Ill. Rev. Stat. 1989, ch. 38, pars. 8—2, 11—17(a)(1)). Each of the other eight indictments stated five counts, the first four of which were also grounded on conspiracy charges. Conspiracy was charged in connection with pimping, soliciting for a prostitute, and pandering (Ill. Rev. Stat. 1989, ch. 38, pars. 8—2, 11—19(a), 11—15(a)(2), 11—15(a)(3), 11—16(a)(2)). The fifth count of each multicount indictment charged simple pandering.

The trial judge dismissed all but the simple pandering charges. The trial judge reasoned that prosecution for conspiracy should be barred because each of the under-

lying offenses required the participation of more than one actor. Independent of that ruling, the trial judge determined that the statute of limitations had expired on charges made in four of the single-count indictments for conspiracy to keep a place of prostitution. The appellate court reversed both determinations. (224 Ill. App. 3d 167.) This appeal followed (134 Ill. 2d R. 315).

## DISCUSSION
### Wharton's Rule

In dismissing the conspiracy charges because the underlying offenses involved multiple actors, the circuit court applied a doctrine of criminal law attributed to Francis Wharton and traced to *Shannon v. Commonwealth* (1850), 14 Pa. 226. (*Iannelli v. United States* (1975), 420 U.S. 770, 43 L. Ed. 2d 616, 95 S. Ct. 1284.) "Wharton's Rule" (or the Rule) states an exception to the principle that the crime of conspiracy is separately punishable from the crime which is the object of the conspiracy. (See *Iannelli*, 420 U.S. 770, 43 L. Ed. 2d 616, 95 S. Ct. 1284.) As generally stated, the Rule prohibits prosecution of a conspiracy to commit a particular crime when the commission of that crime requires the participation of more than one person. (*Iannelli*, 420 U.S. at 773, 43 L. Ed. 2d at 620, 95 S. Ct. at 1288, citing 2 F. Wharton, Criminal Law §1604, at 1862 (12th ed. 1932).) The Rule arises from the element of plural conduct that is the basis of the crime of conspiracy. 2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 112 (1986).

Widely applied by both Federal and State courts (*Iannelli*, 420 U.S. at 774, 43 L. Ed. 2d at 621, 95 S. Ct. at 1288), Wharton's Rule was first recognized in Illinois in the 1940 decision in *People v. Purcell* (1940), 304 Ill. App. 215. There is some issue, however, as to whether the Rule survived the 1961 revision of the Criminal

Code. See, *e.g., People v. Roberts* (1980), 83 Ill. App. 3d 311, 318 (noting the Rule did not survive); *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 534 (acknowledging the Rule but finding it inapplicable); *People v. Urban* (1992), 196 Ill. App. 3d 310, 312 (applying the Rule).

Comments of the joint revision committee indicate Wharton's Rule was intended to be abrogated under section 8—2 of the Criminal Code of 1961 (Code), the modern conspiracy statute. (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 474 (Smith-Hurd 1989); J. Decker, Illinois Criminal Law ch. 4, at 130 (1989).) The committee believed the Rule undermined the "preventative aspect" of prosecuting conspiracies, as it permitted the preliminary agreement incident to criminal activity to go unpunished. Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 474 (Smith-Hurd 1989).

Any intent to abrogate Wharton's Rule, however, is not evident in the language of section 8—2. The operative language of the statute—"an agreement to commit an offense"—merely was intended to restrict the section's reach to acts statutorily proscribed. (Ill. Rev. Stat. 1989, ch. 38, par. 8—2(a); Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 472 (Smith-Hurd 1989).) That would be consistent with the abolition of common law crimes and the elimination of tortious or private wrongs from criminal sanctions. (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 472 (Smith-Hurd 1989).) That language reveals nothing, however, about the fate of Wharton's Rule in Illinois. Contra Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 472 (Smith-Hurd 1989).

Parenthetically, it is somewhat instructive that subsections (b)(1) through (b)(5) of section 8—2 were drafted to preclude certain defenses to co-conspirators. (Ill. Rev. Stat. 1989, ch. 38, par. 8—2(b).) If, in fact, Wharton's Rule was to be abrogated, the statute similarly could

have expressly precluded any defense asserting a bar to prosecution because the substantive crime involved multiple actors.

The status of Wharton's Rule in Illinois is not, however, a matter of direct concern for, as we explain, the Rule's parameters preclude its application in the present case.

The roots of what evolved into Wharton's Rule were grounded in double jeopardy concerns. (*Iannelli*, 420 U.S. at 779-80, 43 L. Ed. 2d at 624, 95 S. Ct. at 1291.) As it is known today, Wharton's Rule is less a rule than a concept—a "judicial presumption, to be applied in the absence of legislative intent to the contrary." (*Iannelli*, 420 U.S. at 776, 782, 43 L. Ed. 2d at 622, 625, 95 S. Ct. at 1289, 1292.) Unfortunately, the Rule's confines have not been consistently recognized. *Iannelli*, 420 U.S. at 776, 43 L. Ed. 2d at 622, 95 S. Ct. at 1289, citing *United States v. Bobo* (1973), 477 F.2d 974, 986.

As generally stated, the Rule can be misleading. The Rule does not prohibit prosecution of a conspiracy simply because the substantive crime involves the participation of two or more actors. It prohibits only such prosecution when the cooperative conduct inherent in the substantive crime is indistinguishable from the element of agreement in the alleged conspiracy. See generally 2 W. LaFave & A. Scott, Substantive Criminal Law §6.5 (1986).

For example, the crimes of dueling, bigamy, adultery, and incest are the classic Wharton's Rule offenses. (See *Iannelli*, 420 U.S. at 782, 43 L. Ed. 2d at 625-26, 95 S. Ct. at 1292.) Commentators have added to that list the crimes of pandering, gambling, the buying and selling of contraband goods, and the giving and receiving of bribes. (2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 119 (1986).) What is common to those crimes is a general congruence of the elemental agreement among the criminal actors and the completed sub-

stantive offense. (See *Iannelli*, 420 U.S. at 782, 43 L. Ed. 2d at 625-26, 95 S. Ct. at 1292.) Such congruency is crucial to the proper application of Wharton's Rule.

The aspect of congruency in the elemental agreement among the criminal actors and the completed substantive offense was recognized in *People v. Urban* (1990), 196 Ill. App. 3d 310. There, the appellate court held Wharton's Rule precluded prosecution for conspiracy to deliver cannabis because the delivery was simply the transfer between the sellers and the defendant purchaser. The court reached that conclusion despite the State's argument that section 8—2 permitted the defendant to be charged with conspiracy to deliver cannabis to himself. (*Urban*, 196 Ill. App. 3d at 312.) The court did not comment on the Rule's presumed abrogation.

The Supreme Court of Virginia recognized the aspect of congruency in *Stewart v. Commonwealth* (1983), 225 Va. 473, 303 S.E.2d 877, where it applied Wharton's Rule to overturn a conviction for conspiracy to pander. Diane Louise Stewart had purchased an established prostitution enterprise from Barbara Doherty. Evidence supporting Stewart's conviction included the testimony of Jennifer Moropolus, a prostitute. Moropolus had been arrested at a hotel to which she had been directed to perform services. The jury had been instructed that the conspiracy conviction against Stewart required finding the existence of an agreement between Stewart, Doherty, "and/or" Moropolus at the hotel. (*Stewart*, 225 Va. at 478, 303 S.E.2d at 879.) The court reasoned that because only Moropolus had been present at the hotel, Wharton's Rule precluded the conspiracy conviction. (*Stewart*, 225 Va. at 480, 303 S.E.2d at 880.) The only collusion could be that between Stewart, the panderer, and Moropolus, the prostitute, a classic circumstance for the Rule's application. See *Stewart*, 225 Va. at 480, 303 S.E.2d at 880.

The importance of congruency in the elemental agreement among the criminal actors and the completed substantive crime for proper application of Wharton's Rule is illustrated in the converse by *People v. Ganatta* (Colo. 1981), 638 P.2d 268. There, the Supreme Court of Colorado declined to apply the Rule to disturb a jury's conviction of Pete Ganatta for conspiracy to commit pimping. Ganatta's conviction arose from prostitution activities connected with a bar he managed. Evidence showed that the barmaid and bartender were aware of receipt of money from prostitution, the barmaid earned a tip for each "trick," and employees were paid a share of amounts collected for prostitution. (*Ganatta*, 638 P.2d at 273.) The court determined Wharton's Rule was of no benefit to Ganatta because he and the other employees were "pervasive[ly] involve[d]" in the prostitution activities. *Ganatta*, 638 P.2d at 273.

In making a conspiracy to commit an act a discrete crime, legislatures seek to avert dangers posed to society at large from concerted criminal conduct. (See *Iannelli*, 420 U.S. at 782-83, 43 L. Ed. 2d at 625-26, 95 S. Ct. at 1292-93.) That is the "preventative aspect" noted in the comments to our section 8—2. However, where there is congruency in the elemental agreement among the criminal actors and the completed substantive offense, as illustrated above, the conspiracy poses no greater threat than that of the completed crime itself. The dangers of the combination required for the substantive crime are addressed in setting the penalty for that crime. (2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 120 (1986).) Separate punishment on a conspiracy theory is inconsistent with legislative aim. 2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 120 (1986); see *Iannelli*, 420 U.S. at 785-86, 43 L. Ed. 2d at 627-28, 95 S. Ct. at 1293-94.

Thus, the prevailing view is that Wharton's Rule should not bar the prosecution of any conspiracy in which the number of conspirators exceeds the essential participants in the substantive crime. (2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 120 (1986).) In that instance, the cooperative conduct contemplated by the substantive crime is distinguishable from the agreement supporting the conspiracy. That view has been referred to as the "third-party exception" to Wharton's Rule. (See 224 Ill. App. 3d 167, 170; *Stewart v. Commonwealth* (1983), 225 Va. 473, 480, 303 S.E.2d 877, 880; *People v. Ganatta* (Colo. 1981), 638 P.2d 268, 272.) More accurately, the prevailing view reveals a limit on the Rule's logical application. (See 2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 120 (1986) (noting another limitation where no punishment is defined for one of the necessary participants in the substantive offense).) When the confines of Wharton's Rule are respected, its rationale is honored and, at the same time, the "preventative aspect" of prosecuting conspiracies is preserved. See *Zambrana v. United States* (N.D. Ind. 1992), 790 F. Supp. 838; 2 W. LaFave & A. Scott, Substantive Criminal Law §6.5, at 121 (1986).

Each of the conspiracies alleged in the indictments before us involves one in which the number of conspirators exceeds the essential participants in the substantive crime that is its object. There is no congruency of the elemental agreement or cooperative conduct inherent in the substantive offenses and the conspiracies charged.

## The Single-Count Indictments

The eight single-count indictments charge conspiracies to keep a place of prostitution. The underlying crime contemplates cooperative conduct between a prostitute and a "person who has or exercises control over the use of any place which could offer seclusion or shelter for

the practice of prostitution." (Ill. Rev. Stat. 1989, ch. 38, par. 11–17.) The cooperative conduct contemplated by the substantive crime is distinguishable from the complex agreements which support the conspiracy charges here.

Five different combinations of conspirators are alleged involving alleged agreements among the conspirators themselves as well as with others to commit the offense. Rose Laws, Kenneth Laws, Linda Laws, Judy Lyons, and Heidi Drost are named as conspirators in two of the indictments. The Lawses and Lyons are named as conspirators in three other indictments. Those five indictments allege that Alicia Burke, Michelle Pietrazak and other unnamed persons were participants in the agreements underlying those conspiracies. The remaining three indictments name, respectively, as conspirators, the Lawses, Rose and Kenneth Laws alone, and Rose and Kenneth Laws together with Mary Ellen Usher. Alicia Burke is alleged to have been a participant in the agreements underlying the conspiracies charged in those indictments.

Because there is no congruency between the cooperative conduct contemplated in the offense of keeping a place of prostitution and the conspiracies alleged, Wharton's Rule presents no barrier to the State's prosecution of the single-count indictments.

### The Multiple-Count Indictments

The Lawses and Judy Lyons are the named conspirators in the four conspiracy counts of each of the eight five-count indictments.

Count I of each of the indictments charges conspiracy to commit the crime of pimping. The cooperative conduct inherent in the crime of pimping is that between a prostitute and a person who receives money or property

"earned" from the "practice of prostitution." Ill. Rev. Stat. 1989, ch. 38, par. 11—19.

Counts II and III of the indictments charge conspiracies to commit the crime of soliciting for a prostitute. The cooperative conduct inherent in the charges made in count II of the indictments is that between a prostitute and a person who "[a]rranges or offers to arrange a meeting" of others "for the purpose of prostitution." (Ill. Rev. Stat. 1989, ch. 38, par. 11—15(a)(2).) The cooperative conduct contemplated in count III involves a person's direction, on the behalf of a prostitute, of "another to a place knowing such direction is for the purpose of prostitution." Ill. Rev. Stat. 1989, ch. 38, par. 11—15(a)(3).

Count IV of the indictments charges conspiracy to commit the crime of pandering. The cooperative conduct inherent in the crime of pandering is that between a prostitute and a person where the person, on behalf of the prostitute, "[a]rranges or offers to arrange" with another "a situation" for the "practice [of] prostitution." Ill. Rev. Stat. 1989, ch. 38, par. 11—16(a)(2).

As in the case of the single-count indictments, each of the conspiracies related to the substantive crimes above exceeds the simple cooperative conduct contemplated in the commission of the crimes. Each of the counts of the indictments involves allegations that the conspirators agreed among themselves, with Alicia Burke, and with others to commit the offenses.

Because there is no congruency between the simple cooperative conduct required for the underlying substantive offenses as legislatively defined and the alleged agreements upon which the conspiracies in the multicount indictments are based, Wharton's Rule provides no reason to bar the State's prosecution.

We therefore affirm the appellate court's determination that prosecution of the conspiracy charges is proper

even though the substantive crimes underlying the conspiracies involve the participation of more than one actor.

Alternative Sentencing Under the Conspiracy Statute

As indicated above, the offense underlying the four single-count conspiracy indictments dismissed by the trial judge as time-barred was the crime of keeping a place of prostitution. Keeping a place of prostitution is classified as a Class A misdemeanor. (See Ill. Rev. Stat. 1989, ch. 38, par. 11—17(b).) In determining the timeliness of the charges in the four indictments, the trial judge applied the limitations period for misdemeanors. See Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b).

The limitations periods for felonies and misdemeanors are set out in section 3—5(b) of the Code. That section provides, in relevant part:

> "Unless the statute describing the offense provides otherwise *** a prosecution for any offense *** must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." (Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b).)

Neither the statute describing the offense of conspiracy nor that describing the crime of keeping a place of prostitution provides a limitations period for the particular conspiracy charged. The trial judge's decision to apply the shorter limitations period for misdemeanors was consistent with the general provision in section 8—2(c) that punishment for a conspiracy cannot exceed the maximum provided for the underlying offense. Ill. Rev. Stat. 1989, ch. 38, par. 8—2(c).

The trial judge was aware that section 8—2(c) contains an exception which provides that conspiracies to commit certain offenses, including the crime of keeping a place of prostitution, may be punished as Class 3

felonies. (Ill. Rev. Stat. 1989, ch. 38, par. 8—2(c).) However, the trial judge was not persuaded that the alternative sentencing exception dictated application of the longer felony statute of limitations. See Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b).

We agree that the misdemeanor limitations period is applicable for the crime of conspiracy to keep a place of prostitution. That conclusion, however, follows from an understanding that the terms "felony" and "misdemeanor" are defined in relation to each other under the Code and that the misdemeanor definition controls what crimes are felonies for purposes of the limitations provision of section 3—5(b). Once that relationship is understood, the classification of a conspiracy to keep a place of prostitution is dictated by the alternative sentencing provision of section 8—2(c).

### "Is Provided" and "May Be Imposed"

For purposes of the Code, felony "means an offense for which a sentence of death or to a term of imprisonment in a penitentiary for one year or more is provided." (Ill. Rev. Stat. 1989, ch. 38, par. 2—7.) Misdemeanor "means any offense for which a sentence to a term of imprisonment in other than a penitentiary for less than one year may be imposed." (Ill. Rev. Stat. 1989, ch. 38, par. 2—11.) Felonies and misdemeanors are distinguished by the phrases "is provided" and "may be imposed" in the respective definitions, a fact not lost on the State.

The State insists that the phrase "is provided" dictates an offense to be a felony so long as there is the possibility that punishment for the offense could be as that defined for a felony. In effect, the State reads "is provided" to mean "may be imposed." Because section 8—2(c) provides that conspiracy to commit the offense of keeping a place of prostitution may be punished as a

Class 3 felony, the State reasons, the conspiracy can only be a felony. Punishment as a felony "is provided" by section 8—2(c).

The State conveniently ignores the definition of a misdemeanor. It is no less true that conspiracy to keep a place of prostitution should be classified as a misdemeanor because punishment under section 8—2(c) for conspiracy to keep a place of prostitution as a Class A misdemeanor "may be imposed."

Realization of that fact is the key to understanding the classification of crimes based on the relationship of the felony and misdemeanor definitions.

Use of the phrase "may be imposed" in the misdemeanor definition mandates that any offense for which it is possible to impose misdemeanor punishment—either because only that punishment is available or because alternative punishment as a felony or a misdemeanor is available—must be classified as a misdemeanor. And, because the limitations provision of section 3—5(b) contemplates that a crime is either a felony or a misdemeanor but not both, the crime cannot be a felony. "Is provided" as used in the felony definition thus must be read to mean "is provided exclusive of the possibility of punishment as a misdemeanor." The felony definition simply does not contemplate an offense for which punishment as a misdemeanor is possible. Only a misdemeanor is defined to accommodate the possibility of alternative punishment. That said, the fact that a crime is punishable as either a felony or a misdemeanor has no bearing on the classification of that crime for purposes of which limitations period is applicable.

Conspiracy to keep a place of prostitution therefore is a misdemeanor for the simple reason that section 8—2(c) permits the possibility of punishment as either a Class 3 felony or a Class A misdemeanor. Accordingly, the applicable limitations period for determining the timeliness of

the charges for that offense is that applicable to misdemeanors.

We find little merit in addressing the other points advanced by the State on the issue. The State argues section 8—2 is not unconstitutionally ambiguous and therefore the "rule of lenity" is inapplicable, the cases cited by defendants are distinguishable because they were decided prior to addition of the phrase "is provided" in the felony definition, and defendants knew they would be tried for felonies. That we agree with each of those points can provide no consolation to the State here. The classification of conspiracy to keep a place of prostitution is dictated by nothing other than the felony and misdemeanor definitions of the Code.

The appellate court was therefore in error to reinstate the four single-count conspiracy indictments dismissed as time-barred by the limitations period for misdemeanors.

## CONCLUSION

For the reasons stated, the judgments of the appellate and circuit courts are affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICES BILANDIC and HARRISON took no part in the consideration or decision of this case.