# STATE OF CONNECTICUT *v.* GLEN JACKSON
## (11417)

LAVERY, LANDAU and SCHALLER, Js.

Argued April 29—decision released August 31, 1993

*David F. Egan,* public defender, for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Reidy,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] possession of a narcotic substance with intent to sell by a person who is not drug-dependent within 1000 feet of a school in violation of General Statutes (Rev. to 1991) § 21a-278a (b),[2] crimi-

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes (Rev. to 1991) § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or

nal impersonation in violation of General Statutes § 53a-130,[3] and possession of a pistol without a permit in violation of General Statutes § 29-35. The defendant makes no claim challenging the conviction of possession of a pistol. The defendant claims that the trial court improperly (1) found that he did not show substantial evidence of drug dependency, and (2) denied his motion for judgment of acquittal on the charge of criminal impersonation. We agree and reverse the judgment of the trial court in part.

The jury could reasonably have found the following facts. On May 21, 1991, Officers Ramano Ratti, Clarence Willoughby and Thomas Trocchio of the New Haven police department were on patrol at approximately 6:30 p.m. in the area of 68-70 Sylvan Avenue in New Haven.[4] As they approached 68-70 Sylvan Avenue, Ratti observed what appeared to be the handle of a revolver protruding from the waistband of the defendant, who was standing on the sidewalk. Ratti and Willoughby jumped out of their vehicle, pursued the

within one thousand feet of, the real property comprising a public or private elementary or secondary school shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school."

[3] General Statutes § 53a-130 provides: "(a) A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another; or (2) pretends to be a representative of some person or organization and does an act in such pretended capacity with intent to obtain a benefit or to injure or defraud another; or (3) pretends to be a public servant, or wears or displays without authority any uniform or badge by which such public servant is lawfully distinguished, with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense."

"(b) Criminal impersonation is a class B misdemeanor."

[4] The Vincent Mauro School is located within 1000 feet of 68-70 Sylvan Avenue and 66 Orchard Street.

defendant for several blocks, and apprehended him in the area of 66 Orchard Street. A search of the defendant revealed twenty-six glassine bags, each containing a white powdery substance, later identified as cocaine, and $491 in cash. An operable Colt Python .357 magnum revolver was seized from the defendant, for which he did not have a permit. When arrested, the defendant identified himself as John Williams. It was subsequently determined from fingerprints that the person who identified himself as John Williams is also known as Glen Jackson.

At a hearing before the trial court, the defendant offered testimony from Sonya Cherry that she has known the defendant for one year, that she saw him use drugs on a daily basis, that he free-based cocaine three or four times a day, and that drug use affected his behavior such that he would act moody when he was not under the influence of drugs. She further testified that she was his girlfriend and that she free-based cocaine and smoked marijuana with the defendant every now and then.

The trial judge ruled at the end of the witness' testimony that the defendant had not made a threshold showing of "substantial evidence" that the defendant was a drug-dependent person at the time of his arrest. The trial court then allowed a substitute information that deleted all language dealing with drug dependency in the counts alleging violations of General Statutes §§ 21a-278 (b) and 21a-278a (b). At the trial, there was no evidence presented by the state to show that the defendant intended to impersonate a real person in violation of General Statutes § 53a-130 other than that the defendant told the arresting officers that his name was John Williams.

We review the defendant's second claim first because the state concedes error and, upon review, we agree.

Section 53a-130 (a) provides in relevant part: "A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another . . . ."

In *State* v. *Smith,* 194 Conn. 213, 479 A.2d 814 (1984), our Supreme Court held that because § 53a-130 (a) prohibits impersonating "another," it does not prohibit merely giving a false name. The plain meaning of "another" is "some other real person." Therefore, giving a false name is not impersonation unless the name given is that of a real person. Id., 220–22. For this reason, the state must adduce evidence at trial that the name a defendant gives belongs to a real person. Id.

In this case, when the defendant was arrested, he gave his name to the police as John Williams. The defendant had given this name to the police in the past, and, at the time of his arrest, they knew him by this name. Fingerprint analysis subsequently established that the defendant was Glen Jackson. Although the state introduced evidence of the defendant's real name and the false name he gave, the state did not produce any evidence that John Williams is a real person. Thus, the trial court should have granted the defendant's motion for a judgment of acquittal on the basis of insufficiency of evidence. We reverse the judgment of conviction of criminal impersonation and direct a judgment of acquittal on that count.

Next, we take up the defendant's claim that because he presented substantial evidence of drug dependency, the trial court should have instructed the jury on that issue. We agree.

The trial court, in its ruling on substantial evidence of drug dependency, said: "As far as the court is concerned, the defendant—the burden that the defendant

bears initially is to show substantial evidence. The only testimony in this case was the testimony that . . . we heard yesterday from Sonya Cherry. Sonya Cherry is certainly—she is not a medical person; she is not a doctor; she is not an expert and the only thing I heard in this court was that in fact she is aware of or was aware of the fact that the defendant had imbibed in the consumption of freebasing coke and smoking marijuana.

"The statute also talks in terms of who is not at the time of such action a drug-dependent person. Of course that time would have to refer to May 21, 1991. I really—I don't recall hearing anything specifically testified to about his use of any drugs concerning that particular date.

"The court does not feel that the testimony that was elicited yesterday in court is sufficient or does not amount to, as far as this court is concerned, to substantial evidence. One might then say how would a person go about proving such a thing? Well, there [are] several different ways. The defendant could testify about it but I only heard the one person and, as I say, the court does not feel that produced substantial evidence to turn this thing the other way.

"And as far as the defendant is concerned, he has the choice whether he wishes to testify or not testify and that's a matter solely within his own discretion.

"So my ruling on this matter is that the defendant has not produced substantial evidence to turn this thing the other way."

The judge's ruling on substantial evidence and the verdict took place prior to our Supreme Court's ruling in *State* v. *Hart,* 221 Conn. 595, 605 A.2d 1366 (1992). The sentencing in this case took place subse-

quent to the publication of *State* v. *Hart,* supra. We conclude that under the *Hart* standard, the trial court's ruling was improper.[5]

---

[5] We note that the defendant presented substantial evidence under the pre*Hart* standard to send the issue of drug dependency to the jury. In *State* v. *McNeil,* 21 Conn. App. 519, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990), we held that the trial court, in assessing substantial evidence, is limited to determining whether the defendant has introduced sufficient evidence, if credited by the jury, to raise a reasonable doubt that the defendant was not drug-dependent. It is the trial court's duty to weigh all the evidence and to determine whether that evidence, if believed by the jury, would permit a reasonable jury to entertain a reasonable doubt that the defendant was not drug-dependent at the time of the alleged crime. *State* v. *Rivera,* 23 Conn. App. 592, 593, 583 A.2d 931 (1990), cert. denied, 217 Conn. 807, 584 A.2d 1192 (1991). In *State* v. *McNeil,* supra, we defined substantial evidence of drug dependency by analogy to insanity cases. "It is not the trial court's function to determine the credibility of the insanity evidence; see *State* v. *Robinson,* 213 Conn. 243, 256, 567 A.2d 1173 (1989) (credibility is within the province of the jury); but only to assure that the burden of proving sanity is not put on the state where there has been only a tangential, casual, or frivolous mention of the defendant's possible lack of sanity. By analogy, therefore, in a drug prosecution the trial court is limited to determining whether the defendant has introduced sufficient evidence, if credited by the jury, to raise a reasonable doubt as to non-drug-dependency." *State* v. *McNeil,* supra, 522.

Prior to *Hart,* the state had the right in the first instance to rely on the presumption that the defendant was not drug-dependent. Once the defendant introduced some substantial evidence tending to prove his drug dependency, however, drug dependency became an issue in the case, the presumption lost its effect, and the state then bore the burden of proving beyond a reasonable doubt that the defendant was not drug-dependent. *State* v. *Januszewski,* 182 Conn. 142, 169, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

In this case, even under the pre*Hart* substantial evidence standard, the trial court improperly determined that the defendant failed to present substantial evidence of drug dependency. During its oral ruling on the issue of drug dependency, the trial court implied that the evidence presented was insufficient because there was no medical testimony. The trial court said: "Sonya Cherry is certainly—she is not a medical person; she is not a doctor; she is not an expert and the only thing I heard in this court was that in fact she is aware of or was aware of the fact that the defendant had imbibed in the consumption of freebasing coke and smoking marijuana." As we noted in *State* v. *Rivera,* supra, 601, *"McNeil* does not require testi-

The jury verdict convicting the defendant was reached on February 21, 1992. On April 10, 1992, the defendant was sentenced. Our Supreme Court released its opinion in *State* v. *Hart,* supra, on April 7, 1992. "In a criminal proceeding, there is no final judgment until the imposition of a sentence. *State* v. *Coleman,* 202 Conn. 86, 89, 519 A.2d 1201 (1987); *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980)." *State* v. *Ayala,* 222 Conn. 331, 339, 610 A.2d 1162 (1992). The holding in *Hart* became the law of this state before the judgment of the trial court became an appealable final judgment. Because final judgment was not rendered in this case until after *Hart* was decided by our Supreme Court, a retroactive application of *Hart* is not involved.[6]

---

mony of a medical expert; all that is necessary is substantial evidence of drug dependency."

In this case, the defendant presented evidence, through the testimony of his girlfriend, Sonya Cherry, to prove that he was a drug-dependent person on May 21, 1991. She testified that he smoked cocaine on a daily basis and that the drugs affected his behavior. The state argues that the evidence presented did not amount to substantial evidence of drug dependency because the evidence was not of the type and quantity presented by the defendants in *McNeil, Rivera* and *Hart.* In those cases, the state argues, psychic or physical dependence upon a drug was established through a variety of substantive testimony, including consistent long-term use, the awareness by the defendant or the defendant's friends or family of the substance abuse, physical or social problems related to drug use, or existence of the dependence at the time the offense was committed. Those cases, however, did not establish a minimum standard for the quantity of evidence that must be presented, nor did they stipulate the type of evidence that must be offered. The earlier cases require only that substantial evidence be presented that, if believed by the jury, could lead the jury to conclude that there is a reasonable doubt that the defendant is not drug-dependent. We conclude that evidence, presented by someone purportedly close to the defendant, that the defendant free-based cocaine on a daily basis over a long period of time, and experienced mood swings when he was not using drugs, could lead a reasonable jury to determine that a reasonable doubt exists as to whether the defendant is not drug-dependent.

[6] Had the *Hart* opinion not been issued before final judgment was rendered in this case, we would nevertheless be bound to apply *Hart* retroactively. "As a rule, judicial decisions apply retroactively. *Robinson* v. *Neil,*

The *Hart* court made two significant holdings. First, in a departure from the burden shifting scenario set out in the earlier cases, the court held that "[General Statutes] § 21a-269[7] assigns to the defendant the bur-

409 U.S. 505, 507–508, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973). Indeed, a legal system based on precedent has a built-in presumption of retroactivity. *Solem* v. *Stumes,* 465 U.S. 638, 642, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984). If a new constitutional doctrine is truly right, we should not reverse lower courts which have accepted it; nor should we affirm those which have rejected the very arguments we have embraced. *United States* v. *Johnson,* 457 U.S. 537, 555, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982), quoting *Desist* v. *United States,* 394 U.S. 244, 259, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969) (Harlan, J., dissenting)." (Internal quotation marks omitted.) *State* v. *Ryerson,* 201 Conn. 333, 339, 514 A.2d 337 (1986).

"The fundamental basis for testing whether a decision should be given retrospective effect is whether the rule which it lays down goes 'to the fairness of the trial—the very integrity of the fact-finding process.' *Linkletter* v. *Walker,* 381 U.S. 618, 639, 85 S. Ct. 1731, 14 L. Ed. 2d 601 [1965]." *Reed* v. *Reincke,* 155 Conn. 591, 601, 236 A.2d 909 (1967).

The *Hart* holdings clearly go to the issues of fairness and integrity of the factfinding process. Under *Hart,* a defendant merely has to present some evidence, even weak or incredible evidence, and the issue of drug dependency will remain in the case and be sent to the jury. The *Hart* holdings on the one hand make it easier for the defendant to get the issue of drug dependency to the jury, while, on the other hand, require the defendant to prove, by a preponderance of the evidence, drug dependency. In this case the issue of drug dependency was not presented to the jury, but it should have been presented under the *Hart* rule. Furthermore, if the case goes forward on the presumption that the defendant is not drug-dependent, the defendant is subject to conviction under General Statutes §§ 21a-278 and 21a-278a, which apply to persons who are not drug-dependent and carry severe mandatory minimum sentences, rather than under General Statutes § 21a-277, which does not carry mandatory minimum sentences. The enhanced penalties provided under §§ 21a-278 and 21a-278a for a defendant who was not drug-dependent affect the length of the defendant's potential incarceration. Because fairness and the integrity of the factfinding process are implicated by *Hart,* we would be bound to apply it retroactively.

[7] General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, provisio or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

den of persuading the jury by a preponderance of the evidence that he or she is drug-dependent." *State* v. *Hart,* supra, 610–11. Second, and more significant to the circumstances of this case, the court stated: "In the future, the trial court should instruct the jury concerning the issue of drug dependency and the defendant's burden of proof if it determines that there is *any foundation in the evidence, no matter how weak or incredible . . . . State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986)." (Emphasis added; internal quotation marks omitted.) Id., 613. *Hart* significantly lowers the standard of what constitutes sufficient evidence, produced by the defendant, to send the issue of drug dependency to the jury.

We conclude, applying the *Hart* standard, that the testimony of Cherry regarding the defendant's asserted drug dependency was clearly a "foundation in the evidence" sufficient to require the trial court to instruct the jury on the issue of drug dependency.

The judgment is reversed only as to the charges of possession of a narcotic substance with intent to sell by a person who is not drug-dependent, possession of a narcotic substance within 1000 feet of a school by a person who is not drug-dependent and criminal impersonation, and the case is remanded for a new trial on the two narcotics charges, and with direction to render a judgment of acquittal on the charge of criminal impersonation.

In this opinion the other judges concurred.