[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S OBJECTION TO ACCEPTANCE OF ATR REPORT
This matter comes before this court for consideration as to whether judgment should enter in accordance with the Report of the Attorney Trial Referee dated June 25, 2002. After requesting on extension of time, the defendant filed an Objection to Acceptance of the ATR report on August 21, 2002. A copy of the hearing transcript was provided, along with exhibits marked at the hearing. Oral argument proceeded before this court on January 13, 2003.
 BACKGROUND
On July 6, 2000, the plaintiff, Del Vento, Inc., doing business as Henderson Trumbull Supply, filed a two-count complaint against the defendant, John Braca. In count one, the plaintiff alleges the following: On August 3, 1974, the defendant executed an application for credit with Henderson Trumbull Supply Corporation (Henderson). The plaintiff subsequently purchased this corporation, thereby acquiring the defendant's open account. Pursuant to the original credit agreement, the defendant charged building materials and supplies to his account through June 11, 1991, and made payments thereon through March 11, 1996. As of June 7, 2000, the defendant owes the plaintiff the principal sum of $2554.12 plus accrued interest of $8342, totaling $10,896.10, with interest accruing at the rate of eighty-four cents per day. Despite the plaintiff's demand for remuneration, the defendant refuses to make payment on his account. In count two, the plaintiff alleges verbatim the facts set forth in count one and asserts that the defendant was unjustly enriched at the plaintiff's expense, in that he refuses to make payment for the building materials and supplies he received.
In his answer, the defendant essentially denies the material allegations of the complaint. The defendant also filed two special defenses, in which he alleges, first, that a corporate entity, rather than the defendant in his individual capacity, is responsible for the CT Page 3513 plaintiff's claim, and, second, that the plaintiff's claim is barred by the statute of limitations.
On May 7, 2002, a hearing was held before Attorney Trial Referee (ATR) Timothy A. Bishop, who, on June 25, 2002, filed a report containing sixteen proposed findings of fact, six proposed conclusions of law, and a summary. The ATR found the following facts: The defendant entered into a credit application,[1] dated August 3, 1974, in his individual capacity to purchase materials to build his personal residence. Henderson, the plaintiff's predecessor, approved the application and created an open account in the defendant's name. In 1975, the plaintiff purchased this corporation and acquired, among other things, its inventory and accounts, which included the defendant's open account. The defendant subsequently formed two corporate entities, John A. Braca, Jr., Inc., and Architectural Design and Development Corporation. He did not, however, enter into another credit application with the plaintiff or its predecessor — other than the one dated August 3, 1974 — nor did he request that the plaintiff make out purchase slips to his corporate entity.[2] The defendant maintained his relationship with the plaintiff with full knowledge that his sole credit application on file with the plaintiff was made in his individual capacity. Between 1989 and 1995, the defendant acquired and retained building materials and supplies from the plaintiff and charged various items to his individual account. Although the defendant paid the plaintiff with four checks apparently drawn on his corporate accounts, the plaintiff's ledger cards reference only "John Braca" and fail to mention once a corporate entity owned or operated by the defendant. The defendant's last charge on this ledger was made on June 11, 1991, and his final payment is dated March 11, 1996. The defendant's business stalled between 1989 and 1991, after which he fell behind on his payments to the plaintiff. As of June 11, 1991, the balance on the ledger card was $3158.98.
Based upon these findings, the ATR made the following proposed conclusions of law: the six-year statute of limitations applies to this open account contract; this action was timely, in that service was made on June 27, 2000, well within the six-year limitations period that was tolled by the defendant's final payment on his account, dated March 11, 1996; the original credit arrangement between the defendant, in his individual capacity, and the plaintiff governs the relationship between the parties; the stamped interest rate on the face of the credit application cannot be enforced, because there was no evidence that the stamp was part of the original credit application; a statutory interest at the rate of 10 percent is due on the liquidated sum of $2468.43, due as of June 11, 1991, with the per diem rounded to sixty-nine cents and the monthly charged rounded to $20.57; and $3000 is a fair and reasonable CT Page 3514 award of attorneys fees. In his summary, the ATR recommended a verdict for the plaintiff in the amount of $9659.03.
On August 22, 2002, the defendant filed an objection to acceptance of the ATR report, accompanied by a transcript of the hearing before the ATR.
 DISCUSSION
Practice Book §§ 19-1 through 19-19 govern proceedings before an ATR. Pursuant to Practice Book § 19-8(a), the ATR must file a report that sets forth "the facts found and the conclusions drawn therefrom." "A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found . . . A party objecting on these grounds must file with the party's objections a transcript of the evidence taken before the [ATR], except such portions as the parties may stipulate to omit." Practice Book § 19-14. A reviewing court "shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . [ATR] has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report . . ." Practice Book §19-17(a).
In reviewing an ATR's report, the court must determine, first, whether "there [is] ample evidence to support the [ATR's] factual findings;"Thermoglaze, Inc. v. Morningside Gardens Co., 23 Conn. App. 741, 746,583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991); and, second, whether "the conclusions reached [are] in accordance with the applicable law." Id.
The court's preliminary task, therefore, is to determine whether the record contains evidence to substantiate the ATR's factual findings. In doing so, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court . . ."
"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding CT Page 3515 of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Meadows v. Higgins, 249 Conn. 155,162, 733 A.2d 172 (1999). "[A] trial court cannot find additional facts or reject others unless a material fact has been found without evidence."TDS Painting Restoration, Inc. v. Copper Beech Farm, Inc.,45 Conn. App. 743, 751, 699 A.2d 173, cert. denied, 243 Conn. 908,701 A.2d 338 (1997).
The defendant objects to the ATR's second and third findings of fact, in which the ATR found that Henderson approved the defendant's credit application and created an open account in his name, and that the plaintiff purchased Henderson in December 1975, thereby acquiring its inventory and accounts, which included, among other things, credit applications, ledger cards, and receivables. According to the defendant, the plaintiff's predecessor is the correct party plaintiff in this action, in that the plaintiff's purchase of Henderson was not an asset purchase, but rather a stock purchase, which did not include Henderson's accounts. Despite the defendant's claim to the contrary, the transcript contains sufficient evidence to support the ATR's finding that the plaintiff's purchase of Henderson included its accounts. Robert Del Vento (Del Vento), an employee of Del Vento, Inc., testified that the plaintiff's purchase of Henderson in December 1975 included "all the material, trucks, and all the inventory, and . . . all the accounts that were established at that time." Transcript, pp. 3-4. He testified further that the defendant's credit application with the plaintiff's predecessor "was handed over . . . by the previous owner." Transcript, p. 4. Moreover, when prodded by defense counsel as to what exactly the plaintiff had purchased, Del Vento proclaimed, "we bought everything." Transcript, p. 41. Thus, there is sufficient support in the record for the ATR's second and third findings of fact.
The defendant objects to the ATR's fourth finding of fact, which reads: "From at least 1989-95, the Defendant obtained materials and supplies from the Plaintiff. He retained these items. The charges for the items were entered on the existing account in the Defendant's individual name." The defendant argues that this finding should include the fact that the counter clerk was not informed that the defendant's status changed from that of an individual building his personal residence to that of a corporate entity developing different properties. The defendant's objection ignores the prescriptions that "a trial court cannot find additional facts"; TDS Painting Restoration, Inc. v.Copper Beech Farm, Inc., supra, 45 Conn. App. 751; and that "[a] CT Page 3516 reviewing authority may not substitute its findings for those of the trier of the facts." Meadows v. Higgins, supra, 249 Conn. 162. This court's authority is confined to a determination of whether the evidence supports the ATR's factual findings. Thermoglaze, Inc. v. MorningsideGardens Co., supra, 23 Conn. App. 746. Testimony before the ATR supports his finding that the defendant purchased items and charged them to his existing individual account. Del Vento testified that the defendant's name appears on the plaintiff's account sheets; transcript, p. 34; and that charge tickets were made out to, and signed by, the defendant. Transcript, pp. 35-36. The defendant, in turn, conceded that charge tickets were filled out in his name; that he never asked the plaintiff's employees to make out the tickets in one of his corporate names; and that he signed the charge tickets, "John Braca, Junior." Transcript, pp. 67-69. The record, therefore, supports the ATR's finding that the defendant purchased items from the plaintiff and charged them to his individual account.
The defendant objects to the ATR's eighth and thirteenth findings of fact, in which the ATR found that the plaintiff's ledger cards reference only "John Braca" and fail to mention a corporate entity owned or operated by the defendant, and that although the defendant signed credit applications with other vendors in his corporate capacity, he maintained his relationship with the plaintiff with full knowledge that his sole credit application on file with the plaintiff was made in his individual capacity. The defendant contends that although he never filled out a credit application with the plaintiff in his corporate capacity, the plaintiff nonetheless realized that the defendant was no longer operating as an individual, but rather on behalf of a corporate entity. The defendant, once again, fails to recognize that "a trial court cannot find additional facts"; TDS Painting Restoration, Inc. v. Copper BeechFarm, Inc., supra, 45 Conn. App. 751; and that on review, the court is limited to a determination of whether the evidence supports the ATR's factual findings. Thermoglaze, Inc. v. Morningside Gardens Co., supra,23 Conn. App. 746. As to the eighth finding of fact, Del Vento testified that the ledger sheets, credit application, and charge tickets were completed in the defendant's name; transcript, 10, 34, 35-36; and the defendant conceded that he never attempted to change the information in the plaintiff's records to reflect his corporate status. Transcript, 67-68. As to the thirteenth finding of fact, the defendant acknowledged that after forming his corporate entities, he completed credit applications with other suppliers in his corporate names, but never did so with regard to the plaintiff's business. Transcript, 69. He continued to charge items in his individual capacity and never asked the plaintiff's employees to make out charge tickets to one of his corporate entities. Transcript, 67-68. The record, therefore, supports the ATR's eighth and CT Page 3517 thirteenth findings of fact.
The court must next determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. MorningsideGardens Co., supra, 23 Conn. App. 746. "Where legal conclusions are challenged, [the court] must determine whether they are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171
(1989). "[T]he trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. The nondelegable judicial duty to render judgments is not limited to endorsement of the decision recommended by the referee." Dills v. Enfield, 210 Conn. 705, 713, 557 A.2d 517 (1989).
The defendant objects to the ATR's second proposed conclusion of law, which states: "The six year statute [of limitations] was tolled by the last payment on the account, March 11, 1996. The six years must be counted from March 11, 1996. Therefore, this action was timely brought when served by Sheriff Albert W. Caliendo on June 27, 2000." The defendant argues that the statute of limitations had run when the plaintiff commenced this action because the plaintiff should have known that the final payment was made by the defendant in his corporate capacity on behalf of subcontracted masons.
General Statutes § 52-576 (a) states: "No action for an account, or on any single or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . ." When "[the] balance [is] one on a running account, and the action to recover thereon is in the nature of one for book debt . . . the statute would run from the last payment made on account." Apuzzo v. Hoer,125 Conn. 196, 199, 4 A.2d 424 (1939); see also Weadon v. First NationalBank Trust Company, 129 Conn. 541, 544, 29 A.2d 779 (1943) ("When payments are made on such an account, the statute runs from the last payment").
In the ninth finding of fact, the ATR found that "[t]he last payment is dated March 11, 1996 in the amount of $500." Del Vento testified that the defendant made the last payment on his account with the plaintiff on March 11, 1996. Transcript, p. 33, 46. The defendant offered contradictory testimony, stating that subcontracted masons ordered masonry materials from the plaintiff, but failed to show up at the construction site and were, therefore, relieved by the defendant. Transcript, 75-76. The defendant agreed, as a result, to pay for the masonry material, and did so, he claims, in his corporate capacity. Transcript, 79-80. CT Page 3518
Thus, to a certain extent, the evidence on this issue was contradictory. "The resolution of . . . conflicting factual claims falls within the province of the trier of fact [i.e., the attorney trial referee]." Holt v. People's Bank, 62 Conn. App. 561, 565-66, 771 A.2d 266, cert. denied, 256 Conn. 917, 773 A.2d 944 (2001). It is generally accepted that in such circumstances, "[i]n making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder." (Internal quotation marks omitted.) Crepeau v. Gronager, 41 Conn. App. 302, 310, 675 A.2d 1361
(1996). The reviewing court "cannot retry the facts or pass on the credibility of the [witnesses]." Nor'easter Group, Inc. v. ColassaleConcrete, Inc., 207 Conn. 468, 473, 542 A.2d 692 (1988). The ATR concluded that the defendant made his final payment on his account on March 11, 1996 in the amount of $500, and, based on this finding, the ATR applied the six-year statute of limitations for open accounts and determined correctly that the plaintiff, having commenced this action on June 27, 2000, was well within the limitations period. This court is convinced that the ATR's conclusion follows logically from the factual findings.
The defendant objects to the ATR's recommended verdict for the plaintiff in the amount of $9659.03, on the ground that the ATR committed a mathematical error in the computation of the damages. Pursuant to Practice Book § 19-17(b): "The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found." In his summary, the ATR's recommended verdict consists of "the principle sum of $2,468.43 together with interest on said sum at the rate of 10% from June 11, 1991 through June 21, 2002 of $2,722.17 less payments of $1,000.00 for a total of $4,190.60 together with $3,000 for attorneys fees . . ." Based on these figures, the ATR's recommended award totaled $9659.03, when, in fact, the total amounts to $7190.60.
Accordingly, the court orders that judgment enter in accordance with the ATR's report in the corrected amount of $7,190.60.
 By the Court, Wolven, Judge